Judge Tucker.
In the case of Andrews v. Lord Cromwell,(f) it was held that where a writ of error is brought by several, and there is an assignment of errors by one only, •without suing a summons and severance of the others, it is null and void ; which seems to shew that, after summons, they may be severed, and he who chooses to proceed by himself may. .
*288 jn tile case of Bunt and Farly v. Snedstone,(a) the defen'dant in a writ of error brought by two persons obtained a rejease 0f errors from one of them ; and pleaded it in bar of die writ of error, as a plea puis darrein continuance ; to which a was entered m the name or both plaintiffs w. me wrjt 0f error. And the question made was, wnether tnis release should bar both or neither of them. And ail the Court, after argument, resolved it should bar him only who released; for the plea being by way of action to discharge themselves of damages which were recovered against them, and to be restored to the possession (of lands) which was lost by the first judgment, and they being joined, in the first action, by the act of the plaintiff and not by their own act, it is not reasonable, that the act of one should charge or prejudice the other. (But if they had been plaintiffs in record by their own act,' (as . in debt 'upon an obligation,) and had been barred in judgment, in error upon that judgment, the release cf one should bar the other.) Wherefore it was adjudged that the judgment should be reversed as to him who did not release ; and that he should be restored to all he had lost; and, as to the other who had released, that he should be barred of his writ of error.
The same reasons, I conceive, will apply to the present • case, and therefore am of opinion that the motion be overruled.
Judges Roane and Fleming, were of the same opinion.
The Court overruled the motion, “ so' far as it related to . “ the abatement of'his suit as to the appellant Enoch; being “ of opinion that the said Bailis may discontinue the said “ appeal as to himself, but that such discontinuance will be “ no cause for an abatement thereof as to the other appellant, u nor any bar to his prosecution thereof alone ; and, it ap- “ pearing to the satisfaction of the Court that the said Bailis “ had refused farther to prosecute this appeal, it was ordered “ that the same be discontinued as to him,”
Baits, for the appellees,
relied on the preamble to the will, and the general testamentary clauses. The testator, after parcelling out his estate among his legatees, disposes of his household stuff, stock, and remains, to his children equally, as residuary legatees. If the word remains will cover the two children of Sib, who were then in existence, they will pass by that residuary clause ; but it is impossible to suppose that he should particularize his household stuff and stock, and yet not mention slaves, if he intended to comprehend theni in that clause. Unless, then, the word “ increase” will include the children born as well before as after the will, he died intestate as to them. Kennon v. M' Roberts,(a) Davies v. Miller,(b) Frogmorton, ex dimiss’ Brantstone, v. Holyday and others,(c) and Busby v. Busby,(d) are all cases in which the declaration by the testator of an intention to dispose of his whole estate has influenced the construction. The word increase, according to its explanation in Johnson’s dictionary, naturally imports issue born as well before as after any particular time; and the constant usage is to insert u future where it is intended to Confine it to future increase.
But if the word be ambiguous, then parol testimony may be admitted to explain it. (e) But, if it were doubtful upon all the other parts of the will whether the testator meant past as well as future increase, humanity alone should induce the Court to adopt the construction contended for by the *290 appellees, to prevent the separation of children from their mothers, (a)
*289 'Thursday, November 23. On the merits, Wickham arguéd that, by the word “ increase,” children born after the death of the testator only passed ; for at the time of the death and not until then, the will speaks. This is a question of intention. If the children living when the will was made had names, it would have been more natural to describe them by name, than by the word increase. But according to the general usage of the country, the word “ increase” means the same as “ future increase.” Parol testimony on this subject is improper, as it goes to prove what the testator meant by particular words.
Wickham, in reply.
With respect to the context, I admit ' . it appears the testator meant to dispose of his whole estate; but the residuary clause carries the whole. In all the cases cited, particularly in Ken non v. M1-Roberts, the preamble was connected with the devising clauses, so as to restrict the duration, not the extent of the estate.
As to the admission of parol evidence, the rule has never been extended farther than to explain some latent ambiguity relative to the person intended to take, or the situation of the property devised.
In Sheltons v. Shelton, the main point was that the execu* tors were entitled to the surplus, if it did not pass by the will. The decision then was, that parol evidence was admissible to rebut an equity. Again, there were various negroes of the same name, and others given on particular plantations. Parol evidence was therefore admitted to shew the situation of the estate. Fleming v. Willis, and the case from Term Reports, went no farther than Sheltons v. Shelton. Coutts v. Craig was a very different case from this; the parol evidence being admitted there in support of the obvious meaning of the instrument, and to rebut an ambiguity raised by the defendant.
Tuesday, November 28.
The Judges pronounced their opinions.
Judge Tucker.
I am not prepared to assign to the word increase, when applied to the gift of a female slave in a will, so extensive a legal operation as the Chancellor has in his decree. Although in some measure a popular expression in this country, I incline to believe it is generally used in a restricted rather than a general sense, as comprehending the future offspring of the female, and not that already born, at the time of executing the will. Being a word of *291 this doubtful complexion, it furnishes an instance of that kind of ambiguity in a will, that evidence may be permitted to explain. (a) In this very case one of the executors in his answer insists, and not without a considerable appearance of reason, “ that it manilestly appears by the will of his testator, that when he devised the negro woman and her increasc, he meant the future increase and not children born when the will was made ; because he devises by his will to his daughter Dolly Reno, a negro woman named Nell, and her increase, and devises to his son Francis, a boy named Ben, who was the child of the aforesaid Nell j nor ought we to forget, ihat children already born have generally, if not alwa\ s, proper names, by which they might be dearly designated, as was very justly observed by Mr. Wickham in his argument.
But, in the present case, the answer and admissions of Biahs Reno, one of the executors, and distributees under the residuary clause in the testator’s will, have very great weight with me, and put beyond a doubt the intentions of the testator as attempted to be explained by other testimony.
On these grounds, I think the Chancellor’s degree should be ailirmed.
Judge Roane,
without deciding upon the import o the term “ increase,” taken abstractly, or agreeing that the parol testimony in this case was admissible or proper, further than as furnishing facts necessary to conduct the Court to a proper conclusion as to the intention of the testator, generally to be collected only from the will itself, concurred, that in this case it was the intention of the testator to pass all the infant children : and added that, in a case of doubt, the law of humanity ought to turn the scale, and prevent the separation of the children from their mother.
Judge Fleming.
This case depends upon the construction pf Francis Reno’s will, which rests on the meaning the testator intended to give to the word increase, Where wor4u *292 or exPressi°ns in a will have a doubtful or double import, it is a general, and safe rule, to expound them according to what aPPears to have been the intention of the testator, provided such exposition doth not contravene some known rule of law ; in doing which the whole will must be taken together and no particular clause or clauses selected.
The testator in. the preamble of his will says, “ reflecting a on the uncertainty of life, and the necessity of haying my “ estate divided among my children by will, to prevent dis- “ putes among them, after my deathand, after saying he was of sound mind and memory, adds “ and as for what “ worldly property it has pleased God to bless me with, I a dispose of it in the following manner,” &c. clearly manifesting an intention to dispose of his whole estate ; and, after a number of specific devises and bequests, to his children, (of which he had many,) he adds, “ Item, Igive and bequeath “ to my daughter Jane Reno, a negro -woman and her in- “ crease,. named Sib, to her and her heirs for everwhich word increase may well be co.nstrued to include the children of Sib, born as well before, as after the date of the will, and ought tq be construed most favourably to the legatees, and to have the same import as if, instead of the word increase, he had used the word offspring ; and I am the rather inclined to believe that all the.children of Sib were intended t,o pass by the bequest, as the word increase precedes the name of the mothers and, if the testator had intended that none should pass but those thereafter to be born, he probably would have bequeathed Sib and her future increase, which would have removed all doubt on the subject. But there is another circumstance in the will that leaves no doubt on my mind, as. to the intention of the testator; and that is, that, after disposing qf a number of negroes, all except the two in question, specially byname, he adds “ and what stock, household u furniture and remains, and the money arising from the c‘ sale, (I suppose he meant the sale of the three negroes di'•c rected to be sold,) after deducting the legacies and paying 41 all just debts and charges, to be equally divided among f my children,”
*293 Can it be, for a moment, believed that the testator, after having specially disposed of a number of negroes, would have left the two infant children of Sib (one of them probably at the breast") to be with his stock, household furniture, * . ’ ■and remains, divided among his eleven children r It could never, I think, have been his intention; and the word remains might be well satisfied with the kitchen furniture, plantation utensils, &c. which he thought too minute to be particularly mentioned.
So much for the construction of the will, unaided by oral testimony, which I think was admissible to explain the intention of the testator; but, without such aid, I am clearly of opinion the decree is correct, and ought to be affirmed.

 1 Cro.892.

 2 Cro.117.

 See 1 Bro. C. C. 472. 477. Fonnereau v. Poyntz. 1 Fonb. 118. 201. 447. 2 Powell on Dev. 71. &c. 1 Term Rep. 701.703. 2 Hen. & Munf. 620, Coutts v. Craig.